*R. E. Dinsmore, R. D. Smith,* for plaintiffs in error.
*Fulwood & Skeen, J. H. Tipton,* contra.

---

4043.  RANEY BROTHERS *v.* GEORGIA COTTON COMPANY.

HILL, C. J.  This case is fully controlled by the decision of this court in *McNamara* v. *Georgia Cotton Co.,* 10 *Ga. App.* 669 (1, 2, 3), 73 S. E. 1092.  See, also, *Gates* v. *Freeman,* ante, 345.  *Judgment affirmed.*

DECIDED SEPTEMBER 17, 1912.

Action on contract; from city court of Ashburn—Judge Tipton. January 17, 1912.

The Georgia Cotton Company sued Raney Brothers for damages on account of the alleged breach of a contract for the sale and delivery of cotton.  The court directed a verdict for the amount sued for.  It was contended that the alleged contract was not binding; that it did not appear that the signing of the name of the Georgia Cotton Company to the writing in question had been authorized; that no demand for delivery of the cotton was shown; and that the testimony as to the value of the cotton on the date specified for delivery was uncertain and stated merely an opinion of the witness, and the jury were not bound to accept it, and therefore the court erred in directing a verdict.  There was a plea that the alleged contract was merely a cover for a speculation in futures; but this defense appears to have been abandoned.  The amount sued for was the difference between the contract price— 11 7/8 cents per pound, and the alleged market price—14 1/8 cents per pound, "f. o. b. Rebecca, Ga.," on November 25, 1909, on 100 bales averaging 500 pounds to the bale, with interest from that date.

The alleged contract was in the following terms: "Cordele, Ga., July 16, 1909.  Messrs. Raney Brothers, Rebecca, Ga.  Gentlemen:  In consideration of one dollar in hand paid and for value received, we beg to confirm having purchased from you to-day as follows: one hundred (100) bales of cotton, basis good middling, Liverpool classification, at eleven and seven-eighths cents (11 7/8) cents per pound f. o. b. Rebecca, Ga.  This cotton to be delivered to us in good merchantable condition, and reweighed, during the month of November, 1909, not later than the 25th day.  This cotton to average in weight between 480 and 520 pounds per

bale. Ruling differences between grades at time of delivery to
apply. Yours truly, Georgia Cotton Company, Thomas Nesbitt."
"Georgia Cotton Company, Cordele, Ga. Gentlemen: We con-
firm the above contract and will deliver the cotton as above agreed.
Yours truly, Raney Brothers."

The only evidence introduced, besides the written contract, was
the testimony of J. S. Billingsley. He testified: "I live in Albany
and am connected with Georgia Cotton Company and have been
for six or seven years. Their business is buying and selling cotton;
and I was with them in November, 1909, and am familiar with
the market price of cotton during that month. As to the market
price, f. o. b. cars, Rebecca, Georgia, on November 25, 1909, the
market price of cotton at the ports, Savannah, was 14½ cents;
and the value of cotton at Rebecca would be less the cost of freight,
which is 35 cents I believe; which would be 14 1/8 cents per pound.
I know Thomas Nesbitt. He was connected with the Georgia
Cotton Company in 1909. I do not know how long he has been
with them, but several years longer than I have; and I have been
with them seven years. Georgia Cotton Company has more than
one place for doing business,—Albany, Cordele, Dawson, Dothan,
Troy, Greenville, Fitzgerald, Moultrie, and other smaller places;
and the head office is at Albany. Rebecca is in the Cordele terri-
tory, and Thomas Nesbitt was in charge of the business at Cordele.
When the Georgia Cotton Company bought cotton the sales pur-
chased by branch offices were reported over the telephone to the
central, the Albany office. This sale was reported, and on receipt of
this report, as soon as possible, Georgia Cotton Company made sale
against it, that sale was executed and carried out, and the cotton
delivered by Georgia Cotton Company to the person to whom sold.
Georgia Cotton Company keeps books, records of their transactions.
I do not undertake to carry all these items in my head. I couldn't
say from memory what particular transactions Georgia Cotton Com-
pany had two or three years ago, but, having refreshed my memory
from the records, I can—from the records of sales against the cot-
ton or cables offering it and our acceptance, etc. I couldn't testify
independently of that record of any sale made and reported to the
company by a branch office. . . I am testifying from the
record, and not from memory. I couldn't tell from memory. I
couldn't know these transactions except I found them somewhere

on the books. . . The Savannah or port price for cotton was 14½ cents. As to where I got that information, I refreshed my memory; and a lot of them laid down on their contracts, and I am familiar with that date. I have looked at the records on that subject. I couldn't tell the price of middling cotton on the 19th day of September, as I have not looked it up. I am testifying not from memory, but from the records of the transaction. I base the rate in Rebecca as being the same amount as the port rate with reduction of freight and bank exchange; that is the only reduction I count, if it is bought f. o. b. Rebecca. As to whether I figure to allow the seller any profit at all, I say port price, because we buy based on certain value at port. One market might be higher than the other. We would be willing to pay port prices less freight and exchange. I was not in Rebecca that day and don't know the price in Rebecca that day. The port prices govern the price at all inland places, and sellers purchasing are governed by port reports each day."

*Haygood & Cutts, Z. Bass,* for plaintiffs in error.
*J. T. Hill, J. W. Dennard, James H. Pate,* contra.